In re NEVADA-UTAH MINES & SMELTERS CORPORATION.

(Circuit Court of Appeals, Second Circuit. January 13, 1913.)

No. 108.

1. BANKRUPTCY (§ 262*)—ASSETS—"PRIVATE SALE."

Where an advertisement of notice of sale of a bankrupt's assets was addressed only to "creditors, stockholders, and other parties in interest," and the meeting at which the sale was ordered was stated to be a meeting of such persons, and the public was at no time invited to attend and bid, a sale conducted pursuant to such notice was a private sale.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 363-365; Dec. Dig. § 262.*

For other definitions, see Words and Phrases, vol. 6, p. 5580.]

2. BANKRUPTCY (§ 262*)—SALE OF ASSETS—PRIVATE SALE—AUTHORITY.

Bankruptcy Act July 1, 1898, c. 541, § 2, 30 Stat. 545 (U. S. Comp. St. 1901, p. 3421) invests the District Court with jurisdiction (7) to cause the estate of bankrupts to be collected, reduced to money, and distributed, and (15) to make such orders, issue such process, and enter such judgments in addition to those specifically provided for as may be necessary for the enforcement of the provisions of the act. Section 70 (b) provides that sales, when practicable, shall be subject to the approval of. the court; and section 30 gives the Supreme Court power to prescribe all necessary orders as to the procedure. Held, that where, after six months had been spent without accomplishing a sale of the bankrupt's assets, the trustee petitioned for an order of sale, and proper notice was given, the court was authorized to order a private sale of specific portions of the bankrupt's property, which together covered all the assets under General Order 18 (89 Fed. viii, 32 C. C. A. xx), providing that on an application to the court and for good cause shown the trustee may sell any specific portion of the bankrupt's estate at private sale.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 363-365; Dec. Dig. § 262.*]

Petition to Revise Order of the District Court of the United States for the Southern District of New York; Learned Hand, Judge.

In the matter of bankruptcy proceedings of Nevada-Utah Mines & Smelters Corporation. Petition by Francis P. McManus to revise an order (198 Fed. 497) directing and confirming a sale of the bankrupt's assets. Affirmed.

Liebmann & Tanzer, of New York City (L. A. Tanzer, of New York City, of counsel), for petitioner.

R. S. Rounds, Winthrop & Stinson, J. N. Rosenberg, and Frank D. Pavey, all of New York City (Bronson Winthrop and Charles T. Payne, of New York City, of counsel), for respondent.

Before LACOMBE, WARD, and NOYES, Circuit Judges.

WARD, Circuit Judge. This is a petition to revise an order of the District Court affirming an order of the referee directing and confirming a sale of the bankrupt's assets.

January 15, 1912, the Nevada-Utah Mines & Smelters Corporation, organized under the laws of the state of Maine with 1,498,500 shares outstanding, of the par value of $10 each, was adjudicated

a bankrupt in an involuntary proceeding.  May 31st the trustee filed a petition stating that he was without funds, and that the property of the bankrupt consisted largely of stock in other mining companies, much of which had been pledged to secure loans, one of which pledges was about to be sold under a judgment, and asking authority at a meeting of creditors to be called to call for funds to protect the assets of the estate, and if none were forthcoming to call for bids for any or all of the property of the estate, and at "such meeting generally to ask for such action of any nature whatsoever in respect to any or all of the assets of the estate as may be deemed necessary or proper."  May 29th the court, upon this petition, entered the following order:

"Upon the annexed petition of Henry Melville, trustee herein, verified the 28th day of May, 1912, and upon motion of Rosenberg & Levis, attorneys for the trustee, it is ordered that a hearing be held before Peter B. Olney, referee in bankruptcy herein, in the above-entitled matter, at his office, 68 William street, borough of Manhattan, New York City, on the 10th day of June, 1912, at three o'clock in the afternoon, to consider and act upon and make such orders in reference to any and all of the matters referred to in the annexed petition as may be deemed just and proper; and it is further ordered that at such meeting any and all bids for any and all of the assets may be considered and acted upon, and said referee may make such order as may by him be deemed proper, including any order for the sale or other disposition of any or all of the assets of this estate, in whole or in part, for cash or on credit, or otherwise as may then be deemed advisable.

"Due, timely, and complete notice of the said meeting shall be given in the following manner:  By advertising the said meeting by notice, which notice shall be printed in the New York Times, once on or before May 31st and once on June 10th, and by like advertisement in the Daily Trade Record, and which said notice shall be in language as follows:

" 'United States District Court, for the Southern District of New York. In the Matter of the Nevada-Utah Mines & Smelters Corporation, Bankrupt. To the Creditors, Stockholders and Other Parties in Interest:  Notice is hereby given that a meeting of creditors and other parties in interest will be held at the office of the Hon. Peter B. Olney, referee in bankruptcy herein, at his office, 68 William street, borough of Manhattan, New York City, on the 10th day of June, 1912, at three o'clock in the afternoon, to consider any and all such matters in reference to the administration of this estate as are referred to in a petition of the undersigned, verified May 28, 1912, and filed with the clerk of the United States District Court for the Southern District of New York, to consider any or all matters in reference to the administration of the assets of this estate or the sale of any portion thereof.  At said meeting any and all offers for the sale of any or all of the assets of this estate, for cash or on credit, may be made, and such offers will then and there be submitted to creditors and other parties in interest, and such orders for the sale of any or all of such assets as may be deemed proper will be applied for, and such orders for any other disposition of any or all of the assets of this estate as may be deemed advisable will further be applied for.  Such orders as to compromise or litigation with disputed claims, if any, will be asked for as may be deemed proper.  The undersigned will request the creditors and other parties in interest to furnish funds to the undersigned for the protection and conservation of the assets of this estate and to redeem various properties pledged by the bankrupt corporation,

" 'Henry Melville, Trustee in Bankruptcy,
" '45 Cedar Street, New York City.
" 'Rosenberg & Levis, Attorneys for Trustee,
" '170 Broadway, New York City.'

"A copy of the foregoing notice shall also be mailed to all of the creditors of this estate to their addresses as the same appear in the schedules in

bankruptcy or in their proofs of claim, if filed. And it is further ordered that if the said Peter B. Olney, Esq., is unable to preside at said hearing on June 10th, herein ordered, that the said hearing may be before such other referee as may then be ordered by this court."

May 31st the company's property was appraised at $455,180.34. June 10th the meeting was held, and various stockholders and creditors were represented by counsel. The referee called upon those present to furnish funds to protect the stock pledged to secure a loan of $25,000 which was advertised to be sold on June 12th, and none was forthcoming. Thereupon he called for any bids for the company's assets, and a bid in writing was submitted, offering to purchase certain specified assets for $100,000 and certain other specified assets for $2,000; the two bids together covering all of the assets. The creditors present unanimously voted to accept the offer, and no stockholder objected. Thereupon the trustee accepted it. June 11th the referee entered an order confirming the sale, although the amount bid was not equal to 75 per cent. of the appraised value of the property sold. July 18th the District Court confirmed the order of the referee, and it is this order which the petitioner asks to be now revised.

McManus, the petitioner, is the holder of 2,500 shares, of a par value of $25,000, out of the shares outstanding, aggregating a par value of $14,985,500. He was represented by counsel at the meeting of June 10th when this sale was made, and offered no objection; but at the meeting of the 11th he did object to the confirmation of the sale on various grounds, which the referee overruled. His counsel now contends that no sale at all was authorized by the order of May 29th, that the sale made was a private one, without proper notice to the stockholders, creditors, or prospective bidders, that only a public sale should have been made, and that no opportunity was given to the parties in interest to object to confirmation.

[1] The District Court confirmed the order of the referee, on the ground that the sale was a public one, to which all bidders were invited by sufficient advertising. We cannot agree with this conclusion, because the advertisement was addressed only to "creditors, stockholders, and other parties in interest," and the meeting to be held was stated to be a meeting of such persons. It seems to us quite clear that many strangers, reading the advertisement, would conclude that they were not entitled to be present at the meeting. The essential feature of a public sale was lacking, viz., that the public be invited to attend and bid.

[2] Bankruptcy Act, § 2 (7) invests the District Court with jurisdiction to "cause the estate of bankrupts to be collected, reduced to money and distributed, * * *" and (15) "make such orders, issue such process and enter such judgments in addition to those specifically provided for as may be necessary for the enforcement of the provisions of this act." Section 70 (b) provides that sales shall when practicable be subject to the approval of the court. Section 30 gives the Supreme Court power to prescribe all necessary orders as to procedure and for carrying the act into force and effect. Of course, it was not intended that the Supreme Court by such orders should

control or alter the law. General Order 18 (89 Fed. viii, 32 C. C. A. xx) provides that "upon application to the court, and for good cause shown, the trustee may be authorized to sell any specific portion of a bankrupt's estate at private sale." The two bids which were accepted by 'the trustee did cover specific portions of the estate and together covered all the assets. Therefore there was a technical compliance with the literal language of the act. However, we do not think that the Supreme Court could have intended or was authorized by section 30 of the act to cut down the statutory power of the District Court to collect the estate by selling the whole of it at private sale if it thought it best to do so.

In this case the petition of the trustee made after six months had been spent without accomplishing anything did show good cause for private sale. We think the order of May 29th authorized a private sale and that the sale might be made at the meeting set for June 10th. The public notice to be given was prescribed in the order, and was not only conformed to, but in point of fact largely exceeded. The 10 days' statutory notice of sale under section 58 (4) was also given to creditors. The circumstances of the case are, as the District Judge has pointed out, very exceptional, and the interest of the petitioner very small. We think the sale made was authorized, and was made in conformity with law. The question was fully discussed, and we have fully considered it, notwithstanding the fact that no petition to revise the order of May 29th was ever filed.

The order is affirmed.