DAVID G. LARIMER, United States District Judge
INTRODUCTION
On January 20, 2017, after a jury trial, defendant James Edward Sandford, III, was convicted on three counts of a fourteen-count indictment. The jury was unable to reach a verdict on the other eleven counts, as to which the Court declared a mistrial. Defendant was later sentenced on the counts of conviction, and a retrial of the open counts is currently scheduled for June 18, 2018.
Defendant has appealed from his conviction and sentence to the Court of Appeals. In this Court, he has also moved, pursuant to Rule 33 of the Federal Rules of Criminal Procedure, for certain relief as to those counts.
The government has moved in the Court to defer the retrial of the open counts until after defendant's pending appeal is decided. Defendant opposes that motion.
FACTUAL BACKGROUND
Defendant was charged in an indictment with various narcotics and firearms offenses. At trial, defendant was represented by appointed counsel.
The jury returned a verdict of guilty on three of the fourteen counts in the indictment: Counts 12 and 13, which relate to firearms offenses, and Count 14, which charges witness tampering. The eleven counts on which the jury was deadlocked all relate to drug offenses. As stated, the Court declared a mistrial as to those counts.
On May 19, 2017, the United State Probation Office ("USPO") filed a presentence report ("PSR") which, inter alia , put defendant's range under the United States Sentencing Guidelines at 360 to 480 months' imprisonment. (Dkt. # 204.) That calculation was considerably higher than it might otherwise have been, because the USPO relied on the "cross-referencing" provision of U.S.S.G. § 2K2.1(c), which essentially boosts the guideline range if the defendant used or possessed a firearm in connection with the commission of another offense. The USPO found this provision applicable on the ground that defendant had used or possessed a firearm in connection with his commission of the drug offenses.
Through counsel, defendant filed objections to the PSR on June 16, 2017. (Dkt. # 208.) The primary basis for defendant's objection to the PSR was that since he had not been convicted on the drug charges, it was improper for the USPO to use the conduct underlying the pending drug charges to increase his sentencing range.
On July 27, 2017, the Court held a status conference, at which defendant read into the record a statement that he had prepared (which has since been filed as Dkt. # 219), principally concerning his dissatisfaction *372 with his then-attorney, Matthew Nafus ("Nafus").
Defendant stated that prior to trial, the government had "offered a plea deal of 7 years," which defendant rejected, because Nafus had assured him that the Court "would not give [defendant] more than 5 or 6 years AFTER trial." (Dkt. # 219 at 1.) Nafus allegedly based that assertion on his estimate of defendant's guideline range. Defendant stated that he was shocked when he saw the PSR, and that had he known that he would be facing a term of 360 to 480 months, he would have taken the government's plea offer. Defendant asked the Court to appoint him a new lawyer.
On August 1, 2017, the Court met with counsel for both sides, concerning plaintiff's request. The Court relieved Nafus from further representation of plaintiff, and assigned plaintiff a new attorney, James Riotto II. (Dkt. # 220.) The Court also gave defendant until September 15, 2017 to file any motions for pre-sentence relief.
By letter dated September 15, 2017, Riotto informed the Court that "[t]he Defendant will not be filing a motion with the Court at this time," and that it was Riotto's "opinion and belief that any relief sought by the Defendant is not ripe and unavailable to him this stage of the proceedings." (Dkt. # 228.)
In a letter to the Court dated September 19, 2017, defendant expressed his disagreement with Riotto's opinion concerning the unavailability of relief, and requested leave to proceed pro se. Defendant stated that he intended to file a pro se motion for relief under Rule 33, which provides in part that "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Defendant stated that his motion would be based on ineffective assistance of counsel during plea negotiations. (Dkt. # 230.)
At a proceeding on September 28, 2017, the Court granted defendant's motion to proceed pro se , but directed that Riotto remain on the case as stand-by counsel. The Court gave defendant additional time to file a Rule 33 motion. In addition, the Court ruled that Nafus's obligation as prior counsel to maintain the confidentiality of statements between him and defendant was waived by virtue of defendant's challenge to the effectiveness of Nafus's representation, insofar as such statements might relate to the subject matter presented by defendant's Rule 33 motion. (Dkt. # 232.)
Defendant filed his Rule 33 motion on October 24, 2017. In his motion, defendant alleges that at one point prior to trial, the government made a plea offer of 70 to 87 months imprisonment. (Dkt. # 235-1 at 3.) Defendant states that he rejected that offer based on Nafus's repeated assurances that defendant was looking at no more than five to six years, even if he were convicted at trial. Id. at 2.
Defendant states that he was "shocked, worried and upset" when he saw the PSR's 360-480 month guideline calculation. He contends that had he known that he could be facing a sentence of that magnitude, he would have accepted the government's earlier plea offer. As defendant puts it, "[t]he crux of [his] argument is that [he] received a substantially more excessive sentence than [he] should have received were it not for [his] attorneys [sic] gross miscalculations and absolute ineffectiveness." Dkt. # 269 at 2.
With respect to the relief sought, defendant states that he "is not specifically asking for a new trial, but is asking that the Court grant him relief that 'neutralizes the taint' of the Sixth Amendment violation." (Dkt. # 235-1 at 1-2.) He goes on to explain *373 that he is asking "that the Court grant him relief by ordering specific performance" of the government's prior plea offer. Id. at 3.
The government responded to defendant's motion on November 14, 2017. (Dkt. # 239.) In its response, the government stated that it had indeed offered a plea deal involving a guideline range of 70 to 87 months, id. at 2, but that Sandford rejected that offer. The government also asserted that defendant's motion was premature, because he had not yet been sentenced. The government argued that even if defendant could show that his trial counsel's performance was deficient (which the government does not concede), defendant could not, at that point, show prejudice (an essential requirement to establish ineffective assistance of counsel), because it was not yet known what sentence the Court would impose on the counts of conviction. In other words, the parade of horribles raised by defendant might not come to pass.
On November 20, 2017, the Court met with the parties and announced its intention to proceed with sentencing on December 5, and to address defendant's Rule 33 motion later. (Dkt. # 245.) At defendant's request, the sentencing date was later adjourned to January 4, 2018 (Dkt. # 253), but the Court essentially agreed with the government's position that the Rule 33 motion could not properly be addressed until after sentencing.
On January 29, 2018, the Court issued a judgment sentencing defendant on the three counts of conviction, principally to a term of imprisonment of 156 months, i.e. , 13 years. (Dkt. # 265.) That was well below the advisory range set forth in the PSR, but greater than the range that had been offered by the government prior to trial. In a lengthy proceeding, the Court set forth its reasons for its Guideline calculation and the basis for its upward departure.
On January 30, 2018, defendant filed a notice of appeal (Dkt. # 267) from this Court's judgment and sentence. At that point, plaintiff was proceeding pro se , his fifth attorney (who was not his trial attorney, but who had been appointed as "stand-by" counsel), having been relieved by this Court that same day. Defendant has disagreed with and challenged each of his numerous appointed lawyers. Defendant's appeal is currently pending before the Second Circuit.
The Court had set a trial date of June 18, 2018, on the drug counts. On February 22, 2018, the parties met before Magistrate Judge Marian W. Payson, who was assigned to handle pretrial matters in this case. On that occasion, Judge Payson appointed new counsel for plaintiff (his sixth), and excluded time under the Speedy Trial Act, in the interest of justice, from that date to the scheduled trial date.
On February 28, 2018, the government filed a motion (Dkt. # 274) for an order deferring the defendant's retrial on the drug counts until after the appeal of the counts of conviction is decided. In its motion papers, the government represents that it "does not intend to retry the defendant on the drug counts if the United States Court of Appeals for the Second Circuit affirms the judgment and sentence on appeal." Dkt. # 274 at 3.
The government "further requests that the Court exclude the time from the Speedy Trial Act clock as to the drug counts in the interest of justice pursuant to 18 U.S.C. § 3161(h)(7)(A)." That section provides for an exclusion when the district judge concludes, based on specific findings, "that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial."
*374 Through his current attorney, plaintiff opposes the government's motion. Plaintiff states that he "wants the case to proceed expeditiously" for "many reasons," including concerns about the possible loss of exculpatory testimony, the return to plaintiff of personal property that has been seized by the government, and generalized "stress, anxiety and apprehension." Dkt. # 278 at 2.
DISCUSSION
I. Government's Motion to Defer Retrial and Request for Time Exclusion
The Speedy Trial Act requires the retrial of a defendant "following a declaration by the trial judge of a mistrial or following an order of such judge for a new trial"-or "following an appeal or a collateral attack"-to "commence within seventy days from the date the action occasioning the retrial becomes final." 18 U.S.C. § 3161(e). But that statute also sets forth a number of grounds on which the court can exclude time from the Speedy Trial clock. As stated, Judge Payson relied on one of those grounds in her time exclusion, the "ends of justice" exclusion under § 3161(h)(7)(A).
While there is not a wealth of case law addressing the issue presented here-whether a court can properly exclude time from the Speedy Trial Act clock, as to open or unresolved counts, pending appellate resolution of related counts, over the defendant's objection-there are some reported cases that have addressed that issue, and they support the proposition that a court can properly order such an exclusion.
The seminal case in this area is United States v. Levasseur , 635 F.Supp. 251 (E.D.N.Y. 1986). In that case, seven defendants were charged with a variety of crimes, in several counts. The jury reached a verdict as to some counts, but was unable to reach a verdict as to others. The district court imposed sentence as to the counts of conviction, and denied the defendants' motions to dismiss the open counts.
The defendants then requested that the court set a trial date with respect to the open counts. The government opposed the motion and sought a Speedy Trial Act exclusion until after the conclusion of the defendants' appeals on the counts of conviction. As here, the government "represented that if the convictions [we]re affirmed on appeal they [would] not reprosecute the defendants on the open counts and [would] move that those counts be dismissed." Id. at 252. The government based its motion in the "ends of justice" exclusion of the Speedy Trial Act.[1]
Though stating that the government's motion "appear[ed] to present a question of novel impression" at that time, District Judge Leo Glasser concluded, after an extensive discussion of the relevant factors and case law, that "the ends of justice to be served by stopping the Speedy Trial clock until the mandate of the Court of Appeals is issued outweigh by far the best interest of the public and the defendants." Id. at 255.
In reaching that conclusion, Judge Glasser noted "the view that 'in processing criminal cases a mechanical adherence to time limits would not serve the interests of defendant, the government, the courts, or society.' " Id. at 254 (citing United States v. Black , 733 F.2d 349, 351 (4th Cir. 1984) ). He went on to note the benefit to the defendant by stopping the Speedy Trial clock: "If the convictions are reversed, there will have been no needless complex and protracted second trial which might *375 also result in a reversal based on the Second Circuit's decision." And as stated by the government, if the convictions were affirmed, that would effectively end the proceedings, and the remaining counts would be dismissed. Id. Judge Glasser concluded that "[n]either the public interest, nor the courts, nor society would be served by a lengthy trial which might prove to be unnecessary." Id. at 255 (citing United States v. Roemer , 514 F.2d 1377, 1381 (2d Cir. 1975), and United States v. Yagid , 528 F.2d 962, 966 (2d Cir. 1976) ).
Since Levasseur was decided, several courts have addressed similar sets of circumstances and have likewise entered time exclusions pending the outcome of an appeal from counts of conviction, where other counts remain open. For example, in United States v. Dusenbery , 246 F.Supp.2d 802 (N.D.Ohio 2002), the district court vacated the defendant's continuing criminal enterprise ("CCE") conviction, and the defendant appealed from his conspiracy conviction and sentence.
The government requested that the court continue the CCE retrial until all appeals were resolved, and stated on the record that it would dismiss the CCE charge if the defendant's conspiracy appeal was unsuccessful. The defendant objected to the government's request, for many of the same reasons advanced by defendant Sandford here.
The district court granted the government's request. After reviewing the case law (including Levasseur ), the court addressed the defendant's objection to an "open-ended" ends-of-justice continuance. Relying on Sixth Circuit authority that an ends-of-justice exclusion need not be specifically limited in time, the court concluded that under the circumstances of that case, such a continuance was justified. Id. at 806-07 (citing United States v. Sabino , 274 F.3d 1053, 1064 (6th Cir. 2001), amended on other grounds , 307 F.3d 446 (6th Cir. 2002) ). The court rejected the defendant's arguments concerning the loss of witnesses over time, faded memories, etc., pointing out that "any prejudice resulting from additional delay would most likely affect the government, which bears the burden of proof ...." Id. at 807.
In a 2003 decision, then-District Judge Denny Chin issued a memorandum decision granting the government's motion to hold in abeyance counts on which the court had declared a mistrial, pending the sentencing and appeal of defendant's conviction on another count. Judge Chin also entered an interest-of-justice exclusion, with no specific end date. United States v. Snype , No. 02 CR. 939, 2003 WL 22387124, at *1-*2 (S.D.N.Y. Oct. 20, 2003).
In addition, the Supreme Court has recognized that the Speedy Trial Act permits open-ended exclusions under the ends-of-justice provision. The Court stated that this reflects Congress's intent "to give district judges a measure of flexibility in accommodating unusual, complex, and difficult cases." Zedner v. United States , 547 U.S. 489, 508, 126 S.Ct. 1976, 164 L.Ed.2d 749 (2006). See also United States v. Tunnessen , 763 F.2d 74, 76 (2d Cir. 1985) (stating that Congress added the ends-of-justice exclusion "to 'avoid the pitfalls of unnecessary rigidity' and provide courts with the discretion to deal effectively with individual cases") (citing S.Rep. No. 1021, 93rd Cong., 2d Sess. 21 (1974) ).
With that grant of flexibility, however, comes a requirement that the court make specific findings supporting a time exclusion. 18 U.S.C. § 3161(h)(7)(A). As the Supreme Court has observed, Congress added this requirement "to counteract substantive openendedness with procedural strictness." Id. at 509, 126 S.Ct. 1976. See also United States v. Shellef , 756 F.Supp.2d 280, 295 (E.D.N.Y. 2011) (stating, with respect to the ends-of-justice exclusion provision, that "[a]bsent specific *376 findings, [that provision] could be used by a court to justify an open-ended exclusion that is not linked to any particular court event or reason").
In the case at bar, I find that the ends of justice that will be served by granting a continuance, and excluding the time under the Speedy Trial clock until after defendant's appeal is decided, outweigh the interests of the public and the defendant in a more speedy trial. I therefore conclude that the retrial of the drug counts should be deferred until after defendant's appeal from the counts of conviction is decided, and that the time until then should be excluded under the Speedy Trial Act.
The Act sets forth a number of factors that the court must consider in determining whether to grant a continuance, but that list is non-exhaustive. See 18 U.S.C. § 3161(h)(7)(B) (setting forth a list of "factors, among others , which a judge shall consider in determining whether to grant a continuance" under the ends-of-justice provision) (emphasis added); see also Tunnessen , 763 F.2d at 76-77 (stating that the statute "contains a nonexclusive list of factors for the court to consider in deciding whether to grant a continuance").
As in Levasseur , none of the factors listed in the statute is directly applicable here. See Levasseur , 635 F.Supp. at 252. The listed factors cover certain broad categories of circumstances, but by making that list nonexclusive, Congress implicitly recognized that there could be a wide range of circumstances that might justify a time exclusion, and that courts need to be afforded discretion to deal with those circumstances as they arise. The apparent purpose of the list of factors and the requirement for on-the-record findings is not to constrict courts' discretion, or to force courts to adhere to a mechanical application of the rules, but to ensure that courts do not grant time exclusions on a whim, or for no other reason than the court's convenience, and to facilitate appellate review. See Tunnessen , 763 F.2d at 77.
In the case at bar, defendant has expressed concerns that if his trial is delayed, witnesses who previously gave testimony exculpatory to him might become unavailable, or their memories could fade. Such concerns are speculative. The government produced, by subpoena, the witnesses to whom defendant refers. And, furthermore, all their testimony has been transcribed and is available to assist the witnesses, should the witnesses have difficulty recalling past events or their prior testimony. And as the court in Dusenberry observed, any prejudice arising from delay in that regard would be more likely to adversely affect the government, which bears the burden of proof beyond a reasonable doubt. 246 F.Supp.2d at 807. See also Barker v. Wingo , 407 U.S. 514, 521, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972) ("deprivation of the right to speedy trial does not per se prejudice the accused's ability to defend himself"); United States v. Pedergon , No. CV 10-5323, 2011 WL 13210236, at *3 (C.D.Cal. July 27, 2011) (stating, in context of a § 2255 habeas case, that defense counsel could reasonably have made a strategic choice not to raise speedy-trial issues, since repeated delays would be more likely to weaken, not strengthen, the government's case).
Aside from that, defendant contends that "these charges have been hanging over his head since June of 2015 and he wants a resolution and closure as soon as possible," since the charges "have been the source of a great deal of stress, anxiety, and apprehension" to him. Dkt. # 278 at 2. The fact remains, though, that defendant will remain in custody at least until the Second Circuit's decision. If the Court of Appeals affirms defendant's conviction on Counts 12, 13 and 14, then defendant, and everyone else concerned, will be spared a retrial on the drug counts. If defendant's *377 conviction is reversed and remanded, then all the charges can be retried at a single trial.
I also note that the Speedy Trial Act provides that periods of delay based on "other proceedings concerning the defendant" are excludable. 18 U.S.C. § 3161(h)(1). The Act provides a non-exclusive list of eight such proceedings, including "delay resulting from any interlocutory appeal," § 3161(h)(1)(C). While in a strict sense defendant's appeal here is arguably not interlocutory, at least as to the counts of conviction, the fact remains that the case itself remains open, and further proceedings will be necessary. For the reasons set forth above, I conclude that some delay is warranted here based on the pendency of defendant's appeal.
In any event, the list set forth in the Act is non-exhaustive. See United States v. Salerno , 108 F.3d 730, 735-36 (7th Cir. 1997) (stating that "courts have adopted a broad interpretation of 'other proceedings,' " and that "courts have discretion to determine the nature of those proceedings which fall within the 'other proceedings' language of that section") (internal quote omitted); United States v. Garrett , 720 F.2d 705, 709 (D.C. Cir. 1983) (noting that the listed proceedings in § 3161(h)(1)(A)-(J) are "merely illustrative and not intended to be exhaustive"). Regardless of whether the precise circumstances here fall squarely within any of the listed proceedings, then, I find that defendant's appeal from the counts of conviction constitutes an "other proceeding[ ] concerning the defendant."
Defendant has also pointed out that some of his seized personal property remains in the possession of the government. Defendant has filed a pro se motion for the return of that property, pursuant to Rule 41(g). Dkt. # 258 at 2. But essentially for the reasons stated in the government's response to that motion (Dkt. # 272), that motion is denied. Defendant has not made a sufficient showing that he is entitled to lawful possession of the property in question, or that the government's need for the property has ended. See Jackson v. United States , 526 F.3d 394, 396 (8th Cir. 2008) ; United States v. Stile , No. 11-cr-185, 2016 WL 3881046, at *2 (D.Me. July 13, 2016) ("If the seized personal property is connected to the pending appeal, this Court should not order its return") (citing United States v. Uribe-Londono , 238 Fed.Appx. 628, 629-30 (1st Cir. 2007) ). The government's continued possession of defendant's personal property, then, does not affect the propriety of deferring the trial of the drug counts.
II. Defendant's Rule 33 Motion
As explained above, the gist of defendant's Rule 33 motion is that his trial attorney, Nafus, was ineffective for failing to give him an accurate estimate of the potential sentence that he would be facing if he were convicted at trial. Of course, defendant was advised at his arraignment as to what the maximum penalties could be in this case, but he contends that Nafus underestimated his actual exposure.
By defendant's own account, it was seeing the Guideline calculation in the PSR that stunned him into the realization that he could be facing as much as 30 to 40 years' imprisonment. As things turned out, the Court did not accept the recommendation of the USPO, and defendant's actual 13-year sentence was far below that range, but defendant still insists that he should now be allowed to turn back the clock, as it were, and accept the government's earlier plea offer of 70 to 87 months.
While the Court has concluded that a retrial on the drug counts should await the outcome of the appeal on the three counts of conviction, defendant's Rule 33 motion stands on a different footing. The law is *378 clear that notwithstanding the pendency of an appeal, this Court may entertain and deny-but not grant-a Rule 33 motion. In United States v. Camacho , 302 F.3d 35, 36-37 (2d Cir. 2002), the Second Circuit held that
the district court retains jurisdiction to deny a Rule 33 motion during the pendency of an appeal, even though it may not grant such motion unless the Court of Appeals first remands the case to the district court. If the district court decides to grant the Rule 33 motion, the district court may then signal its intention to this Court. Only when presented with evidence of the district court's willingness to grant a Rule 33 motion will we remand the case.
See also United States v. Nix , No. 14-CR-6181, 2018 WL 1009282, at *3 (W.D.N.Y. 2018) (district court may entertain and deny a Rule 33 motion, or a motion for reconsideration of an order on a Rule 33 motion, during the pendency of an appeal); see also Fed. R. Crim. P. 33(b)(1) (providing that, "[i]f an appeal is pending, the court may not grant a motion for a new trial until the appellate court remands the case," but not limiting a court's ability to deny such a motion).
In the case at bar, I see no reason not to proceed with defendant's Rule 33 motion. The motion presents factual questions that must be resolved, and neither side will be prejudiced by moving ahead with the matter. Accordingly, the Court will hold a hearing on defendant's motion on May 30, 2018, beginning at 10:00 a.m. At that hearing, the Court anticipates taking testimony from the relevant actors, particularly concerning what was communicated to defendant by his then-attorney during plea negotiations. In deciding defendant's motion, the Court will also consider affidavits, transcripts of prior proceedings, and other materials relating to defendant's motion, subject to their admissibility. If, following the conclusion of the hearing, the Court is inclined to grant defendant's motion, the Court can then take appropriate steps to apprise the Court of Appeals of its inclination.
In connection with the conduct of the hearing, several things should be mentioned. First, as this Court has previously ruled, in light of the allegations defendant has made in his Rule 33 motion, "Mr. Nafus is no longer obligated to protect Attorney-Client communications relating to this matter," with the caveat that "communications concerning matters totally unrelated to the instant charges [raised in defendant's Rule 33 motion] and the advice given by counsel are still protected by the Attorney-Client privilege." (Dkt. # 238 at 1-2.) See United States v. Pinson , 584 F.3d 972, 977-78 (10th Cir. 2009) (noting "unanimous federal authority" that when a habeas petitioner claims ineffective assistance of counsel, he impliedly waives attorney-client privilege with respect to communications with his attorney necessary to prove or disprove the claim); Batista v. United States , No. 14-CV-895, 2016 WL 4575784, at *3 (E.D.N.Y. Aug. 31, 2016) ("[a]s is well settled, where a habeas petitioner raises a claim of ineffective assistance of counsel, the petitioner waives the attorney-client privilege as to all communications with his allegedly ineffective lawyer") (internal quote omitted); United States v. Sosa-Lopez , No. 06-CR-6198, 2013 WL 164091, at *1 (W.D.N.Y. Jan. 15, 2013) ("It is clear that claims made by Sosa-Lopez [alleging ineffective assistance of counsel in connection with defendant's guilty plea and sentencing] constitute a waiver of the attorney-client privilege. Complaints alleging ineffective assistance of counsel allow the responding party to explore the nature of the conversations between counsel and the accused to rebut [the former client's] allegations"); see also Cox v. Donnelly , 387 F.3d 193, 201 (2d Cir. 2004) ("[E]xcept in highly unusual circumstances, the assertedly ineffective attorney *379 should be afforded an opportunity to be heard and to present evidence, in the form of live testimony, affidavits, or briefs") (internal quotation marks omitted).
Since defendant bears the burden of showing that relief is warranted under Rule 33, see United States v. Lopez , No. 09-CR-331, 2017 WL 6554955, at *6 (W.D.N.Y. Dec. 22, 2017), defendant will put on his proof first. As noted earlier, defendant was, once more, appointed counsel-his sixth-in February 2018, though that was mostly in anticipation of the retrial of the drug counts. Defendant has proceeded pro se , by choice, at several times during these proceedings. Defendant must therefore advise the Court of whether he wishes his current lawyer to represent him at the Rule 33 hearing, or to proceed pro se , according to the schedule set forth in the Conclusion of this Decision and Order.
Defendant has filed some other requests, all of which relate to sentencing. Defendant's motions to waive a fine (Dkt. # 258 at 3), and his motion for a prison/program recommendation (Dkt. # 258 at 4) were effectively addressed in this Court's sentence, and are thus moot.
Defendant's motion for a "time adjustment" pursuant to U.S.S.G. § 561.3(b), based on time that he spent in state custody, is denied. The Bureau of Prisons is charged with the determination of such matters. See United States v. Wynder , 659 Fed.Appx. 761, 762-63 (5th Cir. 2016) (matters relating to calculating credit for time served are the responsibility of the Attorney General, acting through the Bureau of Prisons); accord United States v. Cutler , 610 Fed.Appx. 639, 640 (9th Cir. 2015).
CONCLUSION
The government's motion (Dkt. # 274) for an order deferring the defendant's retrial on the drug counts until after the appeal of the counts of conviction is decided is granted. The trial scheduled for June 18, 2018, is adjourned without date. The Court excludes the time under the Speedy Trial Act, pending a decision by the Court of Appeals on defendant's appeal from Counts 12, 13 and 14, in the interests of justice, pursuant to 18 U.S.C. § 3161(h)(1) and (h)(7)(A).
Defendant's motions for the return of his personal property, for a time adjustment relative to his sentence, to waive a fine, and for a prison or program recommendation (Dkt. # 258) are denied.
The Court schedules a hearing on defendant's Rule 33 motion (Dkt. # 235) for May 30, 2018, at 10:00 a.m. Any materials that the parties wish to submit in advance of the hearing must filed no later than ten (10) days before that date.
Defendant must advise the Court in writing whether he wishes to be represented by counsel at the hearing, or to proceed pro se , within fourteen (14) days of the date of entry of this Decision and Order.
IT IS SO ORDERED.

At the time of the Levasseur decision, that provision was codified at 18 1 U.S.C. § 3161(h)(8)(A). Other than being numerically recodified, it remains essentially the same today.